# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1766 | **DATE** | 2/11/2002 |
| **CASE TITLE** | Croft vs. Inlight Risk Management | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
      ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth on the attached order, defendants' motions to dismiss (19, 27, 31) are granted in part and denied in part. Count III and V are dismissed as to all defendants; Count VI is dismissed as to Loucks and Messick; the motions are otherwise denied. Defendants are ordered to answer all remaining claims on or before 2/26/02. The parties are reminded of the 4/15/02 discovery cutoff date and the status hearing set for 4/17/02 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | FEB 14 2002 | 40 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| OR | courtroom deputy's initials | 02 FEB 13 PM 3:52 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| TURNER LLOYD CROFT | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 01 C 1766 |
| | ) | |
| INLIGHT RISK MANAGEMENT, INC., | ) | |
| DEVELOPMENT SPECIALISTS, INC., | ) | |
| as Assignee for the Benefit of the | ) | |
| Creditors of PHYSICIAN DYNAMICS, | ) | |
| INC., PD INSURANCE HOLDINGS, | ) | |
| INC., PHYSICIAN DYNAMICS | ) | |
| INSURANCE CO., INC., DAVID B. | ) | |
| LOUCKS, RODMAN A. FRATES, C.L. | ) | |
| FRATES & CO., INC. and JERRY | ) | |
| D. MESSICK, | ) | |
| | ) | |
| Defendants. | ) | |

DOCKETED
FEB 14 2002

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Turner Lloyd Croft brings suit against InLight Risk Management, Inc. ("IRM"), PD Insurance Holdings, Inc. ("PDIH"); Physician Dynamics Insurance Company ("PDIC"), Development Specialists (as assignee for the benefit of the creditors of Physician Dynamics, Inc. ("PDI")), David Loucks, Rodman Frates, C.L. Frates & Co. and Jerry Messick for violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a), and various state laws. Croft's allegations stem from his employment and ultimate termination by



defendants. This case is before the Court on defendants' motions to dismiss. For the reasons outlined below, the motions are granted in part and denied in part.

**Background**

In January 1998, Croft commenced employment as a Senior Vice President for Sales and Marketing with PDIC, an insurance subsidiary of PDI, located in Houston, Texas. He was offered this position by David Loucks, President and CEO of PDI and acting President and CEO of PDIC and IRM (a former PDI subsidiary). In February 1999, Loucks offered Croft a promotion to Executive Vice-President of IRM and PDIC, a position that required Croft to be responsible for sales and marketing for the companies. The promotion also required Croft to move to Evanston, Illinois.

Croft had serious concerns about moving from Houston to Evanston; the cost of living was higher in Evanston than Houston, and his wife would have to leave the team of doctors that had been treating her for cancer and abandon her law practice. Croft alleges that, in return for taking the promotion and moving to Evanston, PDIC/PDI (via Loucks) promised him his own office, a budget for hiring sales staff, operational support, business referrals, and increased compensation and benefits, among other things. Based on these representations, Croft accepted the promotion, moved to Evanston, and reported to work on June 7, 1999.

According to Croft, immediately after his arrival in Evanston, Loucks, PDI, IRM, and PDIC began taking a series of related actions that adversely changed the terms of his employment, including: (1) hiring Jerry Messick and Michael Spann (substantially younger individuals) as President and CEO of IRM and Executive Vice President of Sales and Marketing of IRM respectively, curtailing Croft's responsibilities with the company; (2) taking away Croft's

-2-

office and informing him that he would have to work out of his apartment without any support staff; (3) taking away Croft's salary in early December 1999 and relegating him to commission-only status; and (4) terminating him on December 23, 1999 without notice or severance benefits. Croft further asserts that between February 1999 and June 1999, Loucks and Rodman Frates met numerous times; during those meetings they decided not to fulfill promises made to Croft and to replace him with younger employees.

Defendants PDIH and IRM have moved to dismiss Counts II-VII of the Amended Complaint and to strike portions of Count I; PDIC has moved to dismiss all Counts of the Amended Complaint and alternatively to strike portions of Count I; Loucks has moved to dismiss Counts II-VI; and C.L. Frates, Rodman Frates, and Jerry Messick have moved to dismiss Count VI.

**Discussion**

On a motion to dismiss, the Court reads the complaint liberally, granting the motion only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which entitles him to relief." *Conley v. Gibson*, 355 U.S. 41, 45 (1957). With this standard in mind, the Court assesses each Count of Croft's Amended Complaint in turn.

*Count I: Age Discrimination*

Croft alleges in Count I that IRM, PDIC, PDI, and PDIH changed the conditions of his employment and then terminated him because of his age, in violation of the ADEA. *See* 29 U.S.C. § 623(a). Defendants argue in their motions that certain allegations made by Croft in Count I are time-barred.

Pursuant to ADEA Section 626(d)(2), an employee must file a charge with the

EEOC within 300 days of the date when he knew or should have known of facts supporting a claim of discrimination. *See* 29 U.S.C. § 626(d)(2); *Hamilton v. Komatsu Dresser Industries, Inc.*, 964 F.2d 600, 603 (7th Cir. 1992). Croft filed charges against PDI (succeeded by PDIH) on June 8, 2000, and against PDIH (which also apparently included allegations against IRM) on October 18, 2000. Defendants accordingly argue that any alleged wrongdoing that occurred prior to August 12, 1999 for PDI (which would exclude everything except Croft's salary cut in December 1999 and his termination) and prior to December 23, 1999 for PDIH (which would exclude everything except Croft's termination) is time-barred.

Croft counters that none of his claims are time-barred because defendants' wrongful conduct occurred in a series of steps, over time, that culminated in Croft's termination on December 23, 1999, which undisputedly is within the statute of limitations. These steps, taken as a whole, thus constitute a "continuing violation." Under the continuing violation doctrine, a plaintiff can recover for a time-barred wrong by linking it with an act that occurred within the limitations period. *Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir. 1992). "For purposes of the limitations period, courts treat such a combination as one continuous act that ends within the limitations period." *Id.*

As an initial matter, defendants argue that Croft cannot claim a continuing violation because he did not check the appropriate box for "continuing violation" on his EEOC claim form, and thus his allegations are beyond the scope of his EEOC charges. However, defendants have failed to provide the court with a copy of this EEOC charge form, and, in any event, it is not part of the complaint. Thus, without commenting on the merits of defendants' argument, we reject it as inappropriate on a motion to dismiss.

A plaintiff can show a continuing violation in one of three ways: (1) by showing that the employer's decision-making process occurred over time, making it difficult to determine the actual date of the allegedly discriminatory act; (2) by showing that the employer has in place an express, openly espoused policy that is alleged to be discriminatory; or (3) by showing that an employer covertly follows a practice of discrimination over a period of time. *Jones v. Merchants National Bank & Trust Co. of Indianapolis*, 42 F.3d 1054, 1058 (7th Cir. 1994). Croft has not alleged that defendants had an openly espoused discriminatory policy, nor that he was unable to determine the dates of the allegedly discriminatory acts. Accordingly, the first two theories are inapplicable here. In the third type of continuing violation, "a plaintiff can only realize that [he] is a victim of discrimination after a series of discrete acts has occurred. The limitations period begins to run when the plaintiff gains such insight." *Jones*, 42 F.3d at 1058 (citations omitted). In this case, Croft's complaint sets forth a series of allegedly discriminatory acts which, by themselves, might not have alerted Croft that he was the victim of discrimination but which, viewed in conjunction, may indeed point to discrimination. These allegations are sufficient to state a claim for a continuing violation.

As a final matter, PDIC and IRM argue that they were not proper defendants for Croft's ADEA claims because they were not named as respondents in the EEOC forms. Indeed, "[o]rdinarily, a party not named in an EEOC charge may not be sued." *Schnellbaecher v. Baskin Clothing Company*, 887 F.2d 124, 126 (7th Cir. 1989). However, an exception to the general rule exists where "an unnamed party has been provided notice of the charge, under circumstances where the party has been given the opportunity to participate in conciliation proceedings aimed at voluntary compliance." *Id.* Defendants claim they had neither proper

notice nor an opportunity to participate in the EEOC proceedings. However, Croft has alleged that these defendants "shared management, operational support, personnel, operations, strategic planning and significant common ownership." Amended Complaint ¶ 69. It is conceivable that the evidence will show these defendants *did* have notice of and opportunity to participate in the EEOC process. At this point, any attempt to parse the extent of their participation in the EEOC process is premature.

*Count II: Promissory Estoppel*

Count II purports to assert a claim for promissory estoppel against Loucks, PDI, and PDIC. To state a claim for promissory estoppel, Croft must allege that: (1) defendants made an unambiguous promise to him; (2) upon which he relied; (3) to his detriment; and (4) his reliance was expected and foreseeable by the defendants. *Quake Construction, Inc. v. American Airlines, Inc.*, 141 Ill.2d 281, 310, 565 N.E.2d 990, 1004 (1990). Croft alleges that the defendants unambiguously promised him certain compensation and benefits; an office, executive assistant, and other support; and certain job titles and duties, among other things, in exchange for Croft's acceptance of the promotion and a transfer to the Chicago area. Amended Complaint ¶ 37. He further alleges that defendants broke each of these promises. Croft also implies that defendants promised him employment for a specific term by stating that defendants "also wrongfully terminated Croft." *See* Amended Complaint ¶ 38.

Defendants argue that Croft has not alleged an "unambiguous promise" for permanent employment or employment for a specific term. The Court agrees. No such allegations is made in the complaint; at best it is only hinted at in Croft's allegations of wrongful termination. That is not sufficient. "[P]romises concerning the duration of employment must be

alleged with more specificity. Illinois courts have traditionally adhered to the presumption of employment at will. An overly permissive operation of the promissory estoppel doctrine in an employment setting could undermine that presumption." *Falk v. U.H.H. Home Services Corp.*, 835 F. Supp. 1078, 1080 (N.D. Ill. 1993) (citing *Goldstick v. ICM Realty*, 788 F.2d 456, 465 (7th Cir. 1986)). Accordingly, to the extent Count II seeks recovery for untimely termination under a promissory estoppel theory, it is dismissed.

However, we reach a different result with respect to the promises Croft cites regarding the conditions and terms of his employment. *See* Amended Complaint ¶ 37. Croft's complaint clearly states that he was promised certain employment benefits; that he relied on these promises to his detriment; and that the promises were broken. These allegations are sufficient to satisfy the elements of a promissory estoppel claim. Defendants' argument that contrary to Croft's assertions, their promises essentially "all came true" does nothing more than raise a factual issue that the Court cannot appropriately decide on a motion to dismiss.

Defendant Loucks also asserts, citing *Strzelecki v. Schwarz Paper Co.*, 824 F. Supp. 821, 823 (N.D. Ill. 1993), that there is no basis for holding him personally liable under an estoppel theory because he was acting as the agent of the corporations. As an initial matter, we do not agree that *Strzelecki* suggests that dismissal of a promissory estoppel claim in this context is always required where the individual defendant acted as the agent of another. Further, at this point, Croft has alleged separate violations by Loucks and has otherwise met the pleading requirements for a promissory estoppel claim. Accordingly, Loucks' motion on this basis is denied.

*Count III: Equitable Estoppel*

Count III purports to state a claim for equitable estoppel against Loucks, PDI, Frates, and PDIC. Defendants argue that equitable estoppel is not a cause of action, and that Croft has failed to identify any rights that defendants should be "estopped" from asserting. Though the doctrine of equitable estoppel can provide the basis for a separate claim in certain circumstances, this is not one of them. "Equitable estoppel may be defined as the effect of the person's conduct whereby the person is barred from asserting rights that might otherwise have existed against the other party who, in good faith, relied upon such conduct and has been thereby led to change his or her position for the worse." *Geddes v. Mill Creek Country Club, Inc.*, 196 Ill.2d 302, 313, 751 N.E.2d 1150, 1157 (2001) (citations omitted). Here, Croft has failed to identify any conduct or rights that give rise to a claim of equitable estoppel that is in any way distinct from Counts II (promissory estoppel) or IV (fraud). Accordingly, Count III is dismissed.

*Count IV: Promissory Fraud*

To state a claim for promissory fraud, Croft must allege that the defendants made a false promise, not intending to keep it, as part of a scheme to defraud intended to induce the promisee to act for the promisor's benefit. *See Bower v. Jones*, 978 F.2d 1004, 1011-12 (7th Cir. 1992). Defendants argue that Croft has failed to allege these elements with sufficient particularly pursuant to Federal Rule 9(b). The Court disagrees. Croft's complaint is sufficient to avoid dismissal: the complaint alleges that the defendants promised Croft various benefits including a new office, a higher salary, a greater budget for hiring support staff, business referrals, and other promises (Amended Complaint ¶¶17-18); that Loucks and Frates intended to renege on these promises (Amended Complaint ¶¶ 23, 25); and that Croft, per defendants'

request, moved across the country to serve the defendants in a new position (Amended Complaint ¶¶ 23-25).[1] These allegations are sufficient to survive a motion to dismiss.

*Count V: Intentional Infliction of Emotional Distress*

In Count V, Croft asserts a claim for intentional infliction of emotional distress ("IIED"), alleging that the conduct of Loucks, PDI, IRM, PDIC, and PDIH was "extreme and outrageous ... that no reasonable person could be expected to endure." Amended Complaint ¶ 57.

Defendants first argue that Croft's claim is preempted by the Illinois Workers' Compensation Act, 820 ILCS 305/5(a), which provides exclusive remedies for claims against an employer for "accidental" injuries in the workplace. *Johnson v. Federal Reserve Bank of Chicago*, 199 Ill.App.3d 427, 433, 557 N.E.2d 328, 332 (1990). However, "[i]ntentional torts, such as infliction of emotional distress ... fall outside the scope of the Act as they are not accidental ...." *Id.* This is true so long as the injury is inflicted by the employer or by a co-employee acting as the alter ego of the employer. *Id.* at 434, 557 N.E.2d at 332; *see also Oates v. Discovery Zone*, 116 F.3d 1161, 1174 (7th Cir. 1997) (same). Croft alleges that the defendant corporations (PDI, IRM, PDIC, and PDIH), through Loucks and Frates (their respective Presidents and CEOs), committed an intentional tort against him. These alleges are sufficient to avoid preemption under the Act.

Croft has nonetheless failed to state a claim for IIED. To do so, he must allege: (1) the conduct involved was extreme and outrageous; (2) the actor intended to inflict severe emotional distress or knew there was a high probability that such distress would result; and (3)

---

[1] Defendants argue that any promises made to Croft were, in fact, fulfilled. Again, we cannot resolve this dispute on motion to dismiss.

the conduct in fact caused severe emotional distress. *McGrath v. Fahey*, 126 Ill.2d 78, 86, 533 N.E.2d 806, 809 (1988). To meet the first element, the alleged conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of human decency." *Oates*, 116 F.3d at 1174 (citing *Public Finance Corp. v. Davis*, 66 Ill.2d 85, 360 N.E.2d 765, 767 (1976)). Defendants' alleged conduct – essentially inducing Croft to take a new position in Illinois only later to take away his responsibilities and ultimately fire him – though highly unpleasant, does not rise to the level of "outrageousness" required to sustain an IIED claim. *See, e.g., Harriston v. Chicago Tribune Company*, 992 F.2d 697 (7th Cir. 1993) (conduct not extreme and outrageous where plaintiff was not permitted to supervise white employees; was reprimanded and falsely accused of poor performance; was excluded from office activities and decisions; was forced out of management position and not given promised promotion; and had her calls monitored and her vehicle vandalized). Croft's naked statement that the conduct was "outrageous" does not make it so. Accordingly, the Court dismisses Count V.

### *Count VI: Tortious Interference With Prospective Economic Advantage*

In Count VI, Croft alleges that he had a reasonable expectancy of entering into a business relationship with IRM and PDIC, and that defendants Loucks, Messick, Frates, C.L. Frates and PDI tortiously interfered with that prospective relationship. Illinois law is clear that a claim for tortious interference requires that the alleged interference come from a third-party. *Knickman II v. Midland Risk Services – Illinois, Inc.*, 298 Ill.App.3d 1111, 1116, 700 N.E.2d 458, 461-62 (1998); *Vickers v. Abbott Laboratories*, 308 Ill.App.3d 393, 411, 719 N.E.2d 1101, 1116 (1999). Thus, a "corporate employer cannot interfere with its own business relationship with its employees," and "employees acting on behalf of an employer cannot interfere with a

plaintiff's business relationship." Vickers, 308 Ill.App.3d at 411, 719 N.E.2d at 1116. Croft attempts to get around this rule by arguing that his potential relationship was with IRM and PDIC – not the defendants named in Count VI. But he alleges in his amended complaint that Loucks was the President and CEO of PDIC (and, at one point, also of IRM), and that Messick was the President and CEO of IRM. Amended Complaint ¶¶ 10, 26A. Accordingly, he cannot maintain a claim against them for interference with prospective advantage. Frates and C.L. Frates & Co., however, are not entitled to the benefit of this same rule; though Croft alleges that the defendants operated as a joint enterprise (Amended Complaint ¶ 14), defendants have not conceded that allegation, and it remains to be seen what the evidence will show.

The Court also rejects Frates' and C.L. Frates' remaining contentions in support of dismissal. First, their argument that Croft was an employee of C.L. Frates is beside the point. Second, reliance on *Fredrick v. Simmons Airlines, Inc.*, 144 F.3d 500 (7th Cir. 1998) is misplaced; in that case, unlike here, the plaintiff had no concrete job offer but merely a unilateral hope of continuing to work.

For these reasons, Count VI is dismissed as to Loucks and Messick, but not as to Frates and C.L. Frates.

### *Count VII: Alter Ego Liability*

Croft concludes his complaint with a count that alleges that PDI, IRM, PDIC, and PDIH "shared management, operational support, personnel operations, strategic planning and significant common ownership ... [and that] there is such a unity of interest and ownership that the individuality of the respective corporations ceased and they should be considered the alter ego of the others." Amended Complaint ¶¶ 69, 70. Defendants assert that Croft's allegations fall

-11-

within the old "integrated enterprise" test that has been rejected by the Seventh Circuit and that because Croft's allegations do not satisfy the new test set forth in *Papa v. Katy Industries, Inc.*, 166 F.3d 937 (7th Cir. 1999), Count VII should be dismissed. In *Papa*, the Seventh Circuit recognized three ways of establishing affiliate liability: (1) where the traditional conditions are present to pierce the corporate veil; (2) where an enterprise splits itself into a greater number of corporations in order to avoid liability under the discrimination laws; or (3) where one corporation may have directed the alleged wrongful act, affiliate liability may attach. *Papa*, 166 F.3d at 940-41. Croft's complaint, read as a whole, is sufficient to state a claim for affiliate liability under the third test, and potentially the first as well. Accordingly, defendants' motions are denied as to Count VII.

## CONCLUSION

For the foregoing reasons, defendants' motions to dismiss [docket items ## 19, 27, 31] are granted in part and denied in part. Counts III and V are dismissed as to all defendants; Count VI is dismissed as to Loucks and Messick; the motions are otherwise denied. Defendants are ordered to answer all remaining claims on or before February 26, 2002. The parties are reminded of the April 15, 2002 discovery cutoff date and the status hearing set for April 17, 2002 at 9:30 a.m.

Dated: February 11, 2002

MATTHEW F. KENNELLY
United States District Judge