Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1766 | **DATE** | 9/9/2002 |
| **CASE TITLE** | Croft vs. Inlight Risk Mangement, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, the Court grants defendants C.L. Frates' and Rodman Frates' motion for summary judgment (48-1). The Court grants in part the motion for summary judgment of defendants IRM, PDIH, PDIC, and Loucks (52-1); the motion is denied as to the promissory estoppel claim against defendants PDI (Development Specialties, Inc.) and PDIC, as well as the claim of alter ego liability against defendants PDIC and IRM, and is otherwise granted. Pretrial order deadline extended to 10/31/02. Trial date of 1/6/03 to stand. Status hearing set to 9/17/02.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 1 1 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 73 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| OR | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



TURNER LLOYD CROFT          )
                            )
     Plaintiff,             )
                            )
v.                          )    No. 01 C 1766
                            )
INLIGHT RISK MANAGEMENT, INC.,)
DEVELOPMENT SPECIALISTS, INC., )
as Assignee for the Benefit of the )
Creditors of PHYSICIAN DYNAMICS, )
INC., PD INSURANCE HOLDINGS, )
INC., PHYSICIAN DYNAMICS    )
INSURANCE CO., INC., DAVID B. )
LOUCKS, RODMAN A. FRATES, C.L. )
FRATES & CO., INC. and JERRY )
D. MESSICK,                 )
                            )
     Defendants.            )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Turner Lloyd Croft brought suit against InLight Risk Management, Inc. ("IRM"), PD Insurance Holdings, Inc. ("PDIH"); Physician Dynamics Insurance Company ("PDIC"), Development Specialists, Inc. (as assignee for the benefit of the creditors of Physician Dynamics, Inc. ("PDI")), David Loucks, Rodman Frates, C.L. Frates & Co. and Jerry Messick for violation of the Age Discrimination in Employment Act and various state-law claims. The Court previously dismissed, pursuant to Fed. R. Civ. P. 12(b)(6), Counts 3 (equitable estoppel) and 5 (intentional infliction of emotional distress) of Croft's Amended Complaint, and also dismissed

Count 6 (tortious interference with prospective economic advantage) as to defendants Loucks and Messick. *Croft v. InLight Risk Management, Inc.*, No. 01 C 1766, 2002 WL 226859 (N.D. Ill. Feb. 14, 2002). Development Specialists, Inc. has been dismissed from the case by stipulation. Defendants Rodman Frates and C.L. Frates have moved for summary judgment on Count 6, and defendants IRM, PDIC, PDIH, and Loucks have moved for summary judgment on Counts 1, 2, 4, and 7.

## Background

In January 1998, Croft commenced employment as Senior Vice President for Sales and Marketing of PDIC, an insurance subsidiary of PDI, located in Houston, Texas. In February 1999, David Loucks, President and CEO of PDI and PDIC, offered Croft a promotion to Executive Vice President of IRM – an insurance brokerage company that was going to be created – and Executive Vice President of PDIC. In these new positions, Croft was to oversee sales and marketing for PDIC as well as all of IRM's operations. The promotion required Croft to move to Evanston, Illinois.

Croft had serious concerns about moving from Houston to Evanston: the cost of living was higher in Evanston than Houston, and his wife would have to leave the team of doctors that had been treating her for cancer and abandon her law practice. Croft contends that in return for taking the promotion and moving to Evanston, PDIC/PDI (via Loucks) promised him his own office and support staff, business referrals, increased compensation and benefits, greater responsibilities, and reimbursement for his moving costs. Additionally, in his new position, Croft was to report directly to Loucks. Based on these representations, Croft accepted the promotion, moved to Evanston, and reported to work on June 7, 1999.

According to Croft, upon his arrival in Evanston, Loucks, PDI, and PDIC took a series of actions that adversely changed the terms of his promised employment, including, among other things, hiring Jerry Messick as President and CEO of IRM and Michael Spaan as Executive Vice President for Sales and Marketing of IRM, curtailing Croft's responsibilities with the company; ordering Croft to report to Messick and Spaan rather than to Loucks; failing to provide support staff to Croft; taking away Croft's office and directing him to work out of his apartment; ignoring his requests for reimbursement of moving expenses; and eventually terminating his employment. Croft filed EEOC charges against PDI and PDIH on June 8, 2000 and October 19, 2000 respectively. He filed this action on March 13, 2001.

### Discussion

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material fact exists, the Court must construe all facts and draw all reasonable and justifiable inferences in favor of the non-moving party, in this case Croft. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

*Count 1: Age Discrimination*

The ADEA prohibits discrimination on the basis of an employee's age. 29 U.S.C. § 623(a)(1). In Count 1, Croft alleges that IRM, PDIC, PDI, and PDIH took adverse employment actions against him and then terminated him because of his age, in violation of the ADEA. In support of their summary judgment motion, defendants first argue that they were not "employers"

within the meaning of the ADEA. The ADEA applies only to "employers," which it defines as entities that are "engaged in an industry affecting commerce" and who have "twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 29 U.S.C. § 630(b). The purpose of exempting smaller employers from the discrimination laws is "not to encourage or condone discrimination ... [but rather] to spare very small firms from the potentially crushing expense of mastering the intricacies of the antidiscrimination laws, establishing procedures to assure compliance, and defending against suits when efforts at compliance fail." *Papa v. Katy Industries, Inc.*, 166 F.3d 937, 940 (7th Cir. 1999).

The discrimination of which Croft complains occurred in 1999. Accordingly, to be liable under the ADEA, Croft's employer must have had at least twenty workers for each day in each of twenty or more calendar weeks in either 1998 or 1999. Croft does not contend that his employer had the requisite number of employees in 1998. For 1999, Croft attempts to combine the employees of IRM, PDIC, PDI, PDIH, and InLight Interactive (which is not a defendant in this case) under an alter ego theory in order to reach the requisite minimum number of employees.

Defendants initially argue that it is improper to combine the employees of these companies for purposes of reaching the twenty employee threshold because the companies were separate corporate entities. Though the exemption of a smaller employer from the discrimination laws may be vitiated by the existence of an affiliated corporation in limited circumstances, *see Papa*, 166 F.3d at 940-41, the Court need not decide that issue, as the twenty employee requirement is not satisfied even after combining all the companies' employees.

As we must on a motion for summary judgment, the Court views the facts in the light most favorable to Croft in determining whether he can meet the statutory requirements. Croft has admitted that neither PDIC nor PDIH had any employees during 1999. *See* Plaintiff's Response to Defendants' 56.1(a)(3) Statement of Material Facts at ¶ 86. He has also admitted that IRM had no employees prior to September 1, 1999. *Id.* at ¶ 88. So he must rely on PDI and InLight to attempt to reach the twenty-employee threshold.

In support of his argument that the threshold is met, Croft points to two documents. The first, according to Croft, is a "list of those who had a grant date prior to December, 1999 for warrants of PDI stock." *See* Exhibit G to Croft's Affidavit. Croft argues that the "combined number of employees of PDI, PDIC, IRM, PDIH and InLight Interactive was at least 21" based upon this list. Plaintiff's 56.1(b)(3) Statement of Additional Facts at ¶ 49. The Court disagrees that this document supports Croft's case. First, Croft provided little explanation regarding what information the document contains, and the document itself is barely legible. Second, assuming for purposes of discussion that the document lists those persons entitled to receive stock in PDI, that has no bearing on whether those persons were employees of that company, and an individual is not considered an "employee" of an entity for purposes of §630(b) simply because he or she is to receive stock in that entity. Rather, the standard for existence of an employment relationship is whether the person appears on the entity's payroll. *See Walters v. Metropolitan Educational Enterprises, Inc.*, 519 U.S. 202, 206-07 (1997). Croft has provided no evidence that the individuals said to be included on the list were on the payroll of any of the companies in question.

Croft also relies on a "Private Offering Memorandum" for PDI dated May

-5-

28, 1999. *See* Exhibit H to Croft's Affidavit. In its "Operations and Facilities" section, the Memorandum states that "[t]he Company [PDI] currently has eight employees at its headquarters, eight in the [InLight] business unit, [and] three in the IRM business unit." *Id.* at p. 13. Defendants contend that this overstates the actual number of employees of the three entities because some of the "headquarters" employees were the same persons identified as the business unit employees. The also point out that even if there were no overlap, the numbers in the Private Offering Memorandum only add up to nineteen, one short of the statutory threshold. Croft attempts to overcome this hurdle by stating that in May 1999, PDI had nineteen employees but "that was before Messick and Spaan were hired."[1] Plaintiff's 56.1(b)(3) Statement of Additional Facts at ¶49.

Croft's argument suffers from an additional flaw, however. Even if he can show that at some point, the various defendants had a combined total of more than twenty employees, this is not enough. Rather, to be considered an "employer" under the ADEA, the entities – if we were to determine to consider them collectively – must have had twenty employees for every day of at least twenty weeks in 1999. Assuming for purposes of discussion that all nineteen employees identified in the Private Offering Memorandum remained employed for the remainder of calendar year 1999, Messick and Spaan would have had to begin employment with IRM by no later than twenty weeks before the end of the calendar year, that is, by the week of August 16, 1999. Croft has admitted, however, that as of August 16, Messick and Spaan were still employees of C.L. Frates and that prior to September 1, 1999, IRM had no employees

---

[1] Prior to joining IRM, both Messick and Spaan were employed by C.L. Frates. *See* Plaintiff's Response to Defendants' 56.1(a)(3) Statement of Material Facts at ¶ 88.

whatsoever.[2] *See* Plaintiff's Response to Defendants' 56.1(a)(3) Statement of Material Facts at ¶ 88.

For these reasons, the Court finds Croft has failed to provide evidence sufficient to establish that the defendants employed at least twenty employees for at least twenty weeks in 1999, as required before they can qualify as an "employer" under §630(b). The Court therefore grants summary judgment in defendants' favor on Croft's ADEA claim.

As we have dismissed Croft's only federal claim, the Court must determine whether to retain jurisdiction over his supplemental state law claims. "In determining whether to adjudicate such a claim, a federal court must choose the course that 'best serves the principles of economy, convenience, fairness and comity which underlie the pendent jurisdiction doctrine.'" *Centres, Inc. v. Town of Brookfield, Wisconsin*, 148 F.3d 699, 704 (7th Cir. 1998) (citations omitted). The Court concludes that retaining jurisdiction over Croft's remaining claims would best serve these principles. The parties have undergone months of discovery to get to this point. They have extensively briefed the issues in this case both at the motion to dismiss and summary judgment stages, and via these submissions, the Court has gained a great deal of familiarity with the facts and legal issues involved in the case. In addition, Croft's counsel was appointed pursuant to 28 U.S.C. §1915(e)(1) and the Court's Trial Bar rules, N.D. Ill. LR 83.36, and it is doubtful that the appointment would carry forward to state court. Accordingly, though Croft no

---

[2] Though Messick and Spaan may have held officer/director positions with IRM while still employed by C.L. Frates, this alone is not enough to confer "employee" status. *See, e.g., McGraw v. Warren County Oil Company*, 707 F.2d 990 (8th Cir. 1983) (rejecting notion that directors of the corporation were employees); *Zimmerman v. North American Signal Company*, 704 F.2d 347 (7th Cir. 1983) (merely serving as director or officer not enough to become employee; test is whether a paid employment relationship exists), *overruled on other grounds, Walters v. Metropolitan Educational Enterprises, Inc.*, 519 U.S. 202, 206-07 (1997).

longer has a federal claim, the Court exercises its discretion to hear his state claims. *See* 28 U.S.C. § 1367(c). We therefore turn to defendants' motions for summary judgment on Croft's remaining claims.

*Count 2: Promissory Estoppel*

Count 2 sets forth a claim of promissory estoppel against Loucks, PDI, and PDIC. To survive summary judgment on that claim, Croft must provide evidence from which a reasonable fact finder could determine that defendants made an unambiguous promise to him, upon which he relied to his detriment, and that his reliance was expected and foreseeable by the defendants. *Quake Construction, Inc. v. American Airlines, Inc.*, 141 Ill.2d 281, 310, 565 N.E.2d 990, 1004 (1990). The Court previously dismissed Croft's promissory estoppel claim to the extent it sought recovery for untimely termination. *Croft*, 2002 WL 226859, at *3. Accordingly, we address only the promises Croft contends were made to him regarding the terms and conditions of his employment.

Defendants first argue that they are entitled to summary judgment on Croft's claim because he was not promised anything other than a set salary, title, and insurance benefits. Croft has, however, offered evidence that he was promised more than just those items. He testified at his deposition that Loucks also specifically promised him that he would be responsible for IRM and the insurance operations of the companies; that he would report directly to Loucks; that he would be reimbursed for his relocation expenses; that would have his own office; and that he would be able to hire support staff, including an assistant with insurance experience and at least one producer to work for him in Chicago in order to accomplish his duties. Croft Deposition at 160-61.

-8-

The defendants next argue that Croft received everything that he was promised – albeit not for as long as he had hoped. Croft admits in his deposition that he began to draw the promised $150,000 salary in April and that he continued to be paid that salary until the time of his termination in December, 1999. Croft Deposition at 69. The record is not so clear, however, with respect to the other promises made to Croft. For example, though Croft admits that he was given the title of Executive Vice President, *see* Croft Dep. at 163, he also provides evidence that the position was gutted of all the responsibilities that should have accompanied it. Specifically, Croft testified that upon his arrival in Evanston, he was informed that Jerry Messick would be the president of IRM, that he would have to report to Messick (rather than David Loucks), and that Messick would essentially be "doing the role that [Croft] thought [he] was going to be doing in Evanston." Croft Deposition at 57. Additionally, at or near the same time, Croft was informed that Michael Spaan had been hired, that Croft would be responsible only for the Chicago office, and that he would have to report to Spaan as well. *Id.* Rather than being in charge of IRM and directing PDIC's insurance operations, Croft instead was relegated to selling insurance. Croft provides other evidence that the defendants never made good on their promises; for example, Croft was never given a "producer" to assist in generating sales and never was reimbursed for his relocation expenses. In short, Croft has provided evidence sufficient to survive summary judgment on his claim that defendants promised him certain benefits that they never delivered.[3]

---

[3] Defendants argue, citing *Ecton v. Van Houten North America, Inc.*, No. 94 C 6825, 1996 WL 296587 (N.D. Ill. 1996), that Croft, as an at-will employee, had no continuing interest in certain terms or conditions of employment. Rather, his employment was cancelable at will and its terms were changeable at will. However, Croft's claim in Count 2 is not that he was damaged by defendants' failure to continue his employment on the terms promised, but rather that he was damaged by giving up all that he had in Houston in reliance on defendants' promises.

Defendants also dispute that Croft relied on their promises when he decided to move to Evanston. They argue that Croft accepted the position in February 1999 – three months before his move – and that the promises Croft now contends were broken were made after that time. Thus, defendants argue, Croft could not have relied upon those promises when he made the decision to move. The record, however, contains evidence that though Croft tentatively agreed to accept the position in February 1999, he continued to discuss the details of the position and whether he should ultimately take it up until the time of his move. *See, e.g.*, Croft Deposition at 49, 160, 193-95. This is evidence from which a jury reasonably could infer that Croft ultimately decided to move to Evanston based on the totality of the conditions for his new employment.

The Court also rejects defendants' final contention that Croft was not damaged by the changes in the terms and conditions of his employment because his only "damage" stemmed from his termination. To the contrary, Croft's claimed damages stem from what he says he gave up based on the promises of the defendants – a good job and his personal situation in Houston.

For these reasons, the Court denies PDI and PDIC's motion for summary judgment on Croft's promissory estoppel claim. However, we grant summary judgment in favor of defendant Loucks; there is no basis for holding him personally liable under a promissory estoppel theory, as he was acting as the agent of the corporations. The evidence indicates that Croft was dealing with PDI/PDIC with respect to his employment – not with Loucks personally. Croft provides no basis for holding Loucks personally liable on a quasi-contract theory. *See, e.g., Gateway Erectors Division of Imoco-Gateway Corp. v. Lutheran General Hospital*, 102 Ill. App. 3d 300, 430 N.E.2d 20 (1981) (an agent of a disclosed principal is not liable for non-performance

-10-

under a contract theory).

*Count 4: Promissory Fraud*

To succeed on his claim of promissory fraud, Croft must provide evidence from which a jury reasonably could infer that the defendants made a false promise, not intending to keep it, as part of a scheme to defraud intended to induce him to act for their benefit. *See Bower v. Jones*, 978 F.2d 1004, 1011-12 (7th Cir. 1992). As discussed above, Croft provides evidence showing that there are genuine issues of fact regarding defendants' making of various promises to induce him to move to Evanston. However, Croft has failed to adduce any evidence that the promisor, David Loucks, never intended to keep his word. At his deposition, when asked whether he had any such evidence, Croft answered "[n]o, I don't." Croft Deposition at 157. In response to the motion for summary judgment, Croft argues that Loucks made the decision to hire Messick before Croft moved to Chicago.[4] Plaintiff's Memorandum in Opposition to Summary Judgment at 10. But this indicates, at most, only that defendants may have intended eventually to replace Croft with Messick, not that Loucks' promises about Croft's employment were false when made. Indeed, Croft asserts in his brief that sometime before he moved to Evanston, defendants "decided to renege on the promises made to Croft." Plaintiff's Opposition to Summary Judgment at 3. Failing to live up to a promise does not constitute fraud. *See Bower*, 978 F.2d at 1012 ("A change of mind can be a breach of contract ... but it is not fraud") (quoting *Price v. Highland Community Bank*, 722 F. Supp. 454, 459-60 (N.D. Ill. 1989)).

Based on the evidence provided, no reasonable fact finder could infer fraudulent

---

[4] However, Croft testified in his deposition that he had "no idea" when the decision was made to bring Messick on board. Croft Deposition at 61.

-11-

intent on the part of the defendants, as opposed to a change of heart. The burden on a plaintiff claiming promissory fraud is "deliberately high," and "[w]ithout 'specific objective manifestations of fraudulent intent' there can be no promissory fraud." *Bower*, 978 F.2d at 1012 (quoting *Hollymatic Corporation v. Holly Systems, Inc.*, 620 F. Supp. 1366, 1369 (N.D. Ill. 1985)). For these reasons, the Court grants defendants' motion for summary judgment on Count 4.

### *Count 6: Tortious Interference With Prospective Economic Advantage*

Croft's only remaining claim for tortious interference with prospective advantage is against defendants Rodman Frates and C.L. Frates & Co; the Court previously dismissed this claim as to defendants Loucks and Messick. To avoid summary judgment on his tortious interference claim, Croft must provide evidence from which a jury reasonably could find that he had a reasonable expectation of entering into or continuing a valid business relationship, that defendants knew of his expectation, that they intentionally interfered with his expectation, and that he was damaged as a result of the interference. *Schuler v. Abbott Laboratories*, 265 Ill. App. 3d 991, 994, 639 N.E.2d 144, 147 (1993).

C.L. Frates argues that summary judgment in its favor is appropriate because Croft has no evidence that it did anything to interfere with Croft's business relationships. The Court agrees. When asked in his deposition how C.L. Frates interfered with his business relationships, Croft testified "I don't know what [C.L. Frates'] role was." Croft Deposition at 180. Croft attempts to implicate C.L. Frates by arguing that Jerry Messick was "involved in Croft's promotion," and that during the time Croft was making the transition to Evanston, Messick was still an employee of C.L. Frates. Plaintiff's Opposition to Defendants' Motion for

Summary Judgment at 4. To hold C.L. Frates liable for the intentional torts of its employee, Croft must show that Messick was acting within the scope of his employment with respect to the transaction at issue and was at that time furthering the interests of his employer. *See, e.g., Gregor v. Kleiser*, 111 Ill. App. 3d 333, 337-38, 443 N.E.2d 1162, 1166 (1983). In support of his claim, Croft offers only the bald assertion that "C.L. Frates is responsible for Messick's conduct." Plaintiff's Opposition at 4. However, Croft has provided no evidence that any alleged actions taken by Messick were to further the interests of C.L. Frates or were done within the scope of his employment for that company. Accordingly, the Court grants C.L. Frates' motion for summary judgment on Count 6.

Croft's claim against Rodman Frates fares no better. Croft alleges that Frates is liable for tortious interference because he participated in the decision to replace Loucks with Messick. Even assuming that Frates did participate in that decision (which is disputed), summary judgment is appropriate. Croft admitted in his deposition that whatever actions Frates took were done solely in his role as a PDI board member. Croft Deposition at 179-84. Illinois law has "recognized a privilege for corporate officers and directors to use their business judgment and discretion on behalf of their corporations. This qualified privilege applies to situations involving a corporate officer's ... 'interference' with the corporation's contractual relationship between the corporation and an employee." *Chapman v. Crown Glass Corporation*, 197 Ill. App. 3d 995, 1005, 557 N.E.2d 256, 263 (1990) (citations omitted). This privilege is destroyed only if the alleged interference by the corporate officer or director is done "solely for the person's own gain or is solely for the purpose of harming the plaintiff." *Id.* at 1006, 557 N.E.2d at 263; *see also Schuler*, 265 Ill. App. 3d at 995, 639 N.E.2d at 148 (plaintiff must show

malice or lack of justification to sustain claim against corporate officer or director). Croft has provided no evidence that Frates acted – if at all – solely for his own gain or that he had a personal vendetta against Croft. Accordingly, the Court grants Rodman Frates' motion for summary judgment on Count 6.

*Count 7: Alter Ego Liability*

In Count 7, Croft asserts that PDI, IRM, PDIC, and PDIH "shared management, operational support, personnel operations, strategic planning and significant common ownership ... [and] they should each be considered the alter ego of the others." Amended Complaint ¶¶ 69, 70. As an initial matter, though Croft asserts alter ego liability as a separate claim, it is not an independent cause of action; rather, it is a means for a plaintiff to hold one party liable for the actions of others. *See In re Rehabilitation of Centaur Insurance Company*, 238 Ill. App. 3d 292, 300, 606 N.E.2d 291, 296 (1992). Croft's only remaining claim at this point is his promissory estoppel claim against PDI and PDIC. The Court concludes that he has provided sufficient evidence to avoid summary judgment on the issue of affiliate liability.

In *Papa v. Katy Industries, Inc., supra,* the Seventh Circuit recognized various means of establishing affiliate liability, including showing that the traditional conditions for piercing the corporate veil are present or when one corporation may have directed the alleged wrongful act of the other. *Papa,* 166 F.3d at 940-41. Croft argues that he has provided sufficient evidence on both points. In their motion, defendants emphasize that once the companies completed a "reverse spin-off transaction," there ceased to be any relationship between PDIC, PDIH, and IRM on the one hand and PDI on the other. "Accordingly, defendants PDIH, PDIC and IRM cannot be liable for any obligation of PDI." Defendants' Memorandum in Support of

-14-

Summary Judgment at 20. The Court disagrees. As defendants recognize, this "reverse spin-off transaction" did not occur until September 30, 1999 – well after the alleged promises to Croft were broken. Further, Loucks – the alleged promisor – served both as the President and CEO of PDI and the President and CEO of PDIC around the time of Croft's move. Before accepting the new position, Croft was employed by PDI, and the new position was to encompass duties for PDIC and IRM. Thus one reasonably could conclude that the alleged promises were made and broken by persons acting on behalf of each of these entities, a proper basis for alter ego liability under *Papa*. Croft has provided no basis, however, to impose alter ego liability on PDIH. For these reasons, the Court grants summary judgment in favor of PDIH on Count 7 but denies summary judgment with respect to PDIC and IRM.

## Conclusion

For the foregoing reasons, the Court grants defendants C.L. Frates' and Rodman Frates' motion for summary judgment [docket item # 48-1]. The Court grants in part the motion for summary judgment of defendants IRM, PDIH, PDIC, and Loucks [item # 52-1]; the motion is denied as to the promissory estoppel claim against defendants PDI (Development Specialties, Inc.) and PDIC, as well as the claim of alter ego liability against defendants PDIC and IRM, and is otherwise granted. The date for filing the final pretrial order is extended to October 31, 2002. The case remains set for trial on January 6, 2003 and is hereby set for a status hearing on September 17, 2002 at 9:30 a.m. for the purpose of discussing the possibility of settlement.

Dated: September 9, 2002

MATTHEW F. KENNELLY
United States District Judge